IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 1:20-cv-01559-RMR-MEH

SHARHEA L. WISE,

    Plaintiff,

v.

LOUIS DEJOY,
United States Postal Services Postmaster General,

    Defendant.

## ORDER

Pending before the Court are Plaintiff's Motion for Partial Summary Judgment, ECF No. 39, and Defendant's Motion for Summary Judgment, ECF No. 40. For the reasons stated below, Plaintiff's Motion for Partial Summary Judgment, ECF No. 39, is DENIED, and Defendant's Motion for Summary Judgment, ECF No. 40, is GRANTED.

**I.    BACKGROUND[1]**

Plaintiff Sharhea L. Wise worked as a probationary City Carrier Assistant ("CCA") for the United States Postal Service in Denver, Colorado from November 1, 2014 until January 31, 2015, when she was terminated. CCAs in Plaintiff's position are subject to

---

[1] The facts stated herein are take from Plaintiff's Amended Complaint, ECF No. 28; Defendant's Answer, ECF No. 29; Defendant's Statement of Facts in his Motion for Summary Judgment, ECF No. 40 at 3–12; Plaintiff's summary judgment briefing, ECF Nos. 39, 41, 43; and the exhibits cited in those documents. These facts are undisputed unless otherwise noted.

heightened scrutiny by management. On December 1, 2014, Plaintiff received a performance evaluation in which she was rated "unsatisfactory" in three out of six work areas—work quantity, work quality, and work methods—and in which it was noted that she needed to improve in scanning packages correctly.

On December 25, 2014, Plaintiff found out that she was pregnant, and the next day, she told her second-level supervisor, Ron Domingo. On December 31, 2014, Plaintiff received a second performance evaluation, in which she received the same unsatisfactory ratings, as well as an additional unsatisfactory rating for dependability. On January 3, 2015, Plaintiff informed another manager that she was pregnant and provided that manager with paperwork from her doctor. On January 15, 2015, Plaintiff gave a note from an obstetrics and gynecology doctor, recommending that she "not lift, pull, or push anything greater than 20 pounds," to Mr. Domingo. Plaintiff's immediate supervisor, Mr. Dean Lego, testified that he and Mr. Domingo discussed the restrictions in the doctor's note, and Plaintiff testified that Mr. Domingo and Mr. Lego told her that she could leave packages that were more than 20 pounds at the station. Mr. Lego testified that he believed that Plaintiff knew not to pick up packages that were too heavy for her and that she would tell management if she was in a situation in which this restriction was being exceeded. On January 16, 2015, the day after Plaintiff submitted the doctor's note, the Postal Service approved her request for "light duty" work. Plaintiff testified that she did not recall ever informing anyone that, at any point, her restrictions not to lift, pull, or push objects weighing more than 20 pounds were not being followed.

2

Sometime after January 15, 2015, Plaintiff was attempting to use a gurney to move mail to her delivery truck and asked Mr. Lego for help.  Mr. Lego told Plaintiff she was not doing it the right way, yelled at her, and did not help her.  Plaintiff testified that this was the only instance that she could recall asking for help to lift, pull, or push anything that exceeded her weight restrictions.  Another time after January 15, 2015, there was an incident in which Mr. Domingo told Plaintiff to leave some packages at the station if she thought they were too heavy, which Plaintiff did.  Later that day, Mr. Domingo called Plaintiff while she was out delivering mail and told her to come back to the station and deliver the packages.  Plaintiff testified that she said "Okay" and delivered the packages; she does not recall reminding Mr. Domingo of her restrictions at that time.

On January 21, 2015, Plaintiff received a letter of warning regarding her unscheduled absences that took place on December 18, 2019, January 2, 2015, and January 12, 2015.  At least one of these absences were due to Plaintiff's visit to the emergency room for care when she was feeling pregnancy-related pain and discomfort.  Also on January 21, 2015, Plaintiff was assigned to deliver mail from a different postal station that day.  However, Plaintiff did not complete the job; instead, about 20 minutes after she left for the delivery route, she returned to the station and spoke with the station manager about resigning.  The station manager provided Plaintiff with a resignation form, on which Plaintiff wrote that the reason for her resignation was "Personal Reasons (Pregnancy)."

The next day, on January 22, 2015, Plaintiff rescinded her resignation.  That same day, Plaintiff also received a letter of warning for unacceptable work performance

regarding packages that she failed to properly scan. In addition, about a week after the day that Plaintiff failed to deliver the mail, filled out the resignation form, and walked off the job, she received a seven-day paid suspension as a result of that incident. Finally, on January 30, 2015, Mr. Domingo decided to terminate Plaintiff's employment because of this incident, which he testified he considered to be egregious. He delivered a letter of separation to Plaintiff on January 31, 2015.

After her termination, "[o]n February 6, 2015, Plaintiff timely initiated formal contact with [t]he United States Equal Employment Opportunity Commission ('EEOC' or 'EEO') counselor," and "[o]n April 3, 2015, Plaintiff timely filed a Formal Complaint of Discrimination." ECF No. 28 ¶ 7; ECF No. 29 ¶ 7. "On May 6, 2019, the EEOC Administrative Judge issued an Order Entering Judgment in favor of Defendant," and after a Final Agency Decision issued, the Equal Employment Opportunity Commission Office of Federal Operations issued a decision on appeal on March 4, 2020, affirming the Final Agency Decision. ECF No. 28 ¶ 8; ECF No. 29 ¶ 8. The decision on appeal notified Plaintiff of the option to file a civil action in this Court within 90 days. ECF No. 28 ¶ 8; ECF No. 29 ¶ 8. On May 29, 2020, Plaintiff, proceeding *pro se*, filed an Employment Discrimination Complaint in this Court against Defendant, the Postmaster General for the United States Postal Service. ECF No. 1.

The Court granted Plaintiff leave to amend the Complaint on August 7, 2020, ECF No. 14, and Plaintiff timely amended her complaint on October 9, 2020, ECF No. 18. On December 7, 2020, the Court granted Plaintiff's Motion for Leave to Provide Limited Scope Representation Pursuant to D.C.COLO.LAttyR 2(b)(1) and LAttyR 5(a)-(b), ECF

No. 22, and Plaintiff's counsel was appointed. *See* ECF No. 23. On December 23, 2020, Plaintiff's counsel, with the written consent of Defendant, filed another Amended Complaint, ECF No. 28, which is now the operative pleading. Defendants filed an Answer on January 7, 2021. ECF No. 29.

In the Amended Complaint, Plaintiff brings claims for:

(1) disability discrimination in violation of the Pregnancy Discrimination Act and Section 501 of the Rehabilitation Act of 1973, ECF No. 28 ¶¶ 37–43;

(2) retaliation "for requesting a reasonable accommodation and opposing discrimination based on sex/pregnancy," in violation of the "anti-reprisal provision of Title VII and the Rehabilitation Act," *id.* ¶¶ 44–48;

(3) harassment and hostile work environment based on sex and reprisal, *id.* ¶¶ 49–55;

(4) failure to accommodate, *id.* ¶¶ 56–62; and

(5) sex-based discrimination in violation of "Title 7 of the Pregnancy Discrimination Act and Section 501 of the Rehabilitation Act of 1973," *id.* ¶¶ 63–66.

On October 1, 2021, Plaintiff filed her present Motion for Partial Summary Judgment. ECF No. 39. On October 4, 2021, Defendant filed his Motion for Summary Judgment. ECF No. 40. The motions are fully briefed and ripe for review.

## II.     LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is 'material if under the substantive law it is essential to the proper disposition of the claim.'" *Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ys, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664,

670 (10th Cir. 1998)); *see also Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material."). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see also Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "[T]he dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997); *see also Anderson*, 477 U.S. at 248. "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004).

"[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). However, "the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings" at this stage. *Adler*, 144 F.3d at 671. If the movant carries "the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law," then "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* at 670–71.

Ultimately, the Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

### III.     ANALYSIS

Plaintiff seeks summary judgment in her favor on her fourth claim for relief for failure to accommodate, as well as her discrimination claims.[2] ECF No. 39 at 8–13. Defendant seeks summary judgment in his favor and dismissal of all claims. ECF No. 40 at 3, 13–22. For the reasons below, the Court DENIES Plaintiff's motion for partial summary judgment, ECF No. 39, and GRANTS summary judgment in favor of Defendant.

### A.     Counts 1 and 5: Discrimination Based on Sex and Pregnancy-Related Disability

Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, prohibits employers from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1); *see EEOC v. TriCore Reference Lab'ys*, 849 F.3d 929, 933 (10th Cir. 2017). "The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k); *see TriCore Reference*, 849 F.3d at 933. "[W]omen affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all

---

[2] Although Plaintiff's brief does not specify, the Court interprets her arguments regarding "discrimination" as seeking summary judgment on her first and fifth claims. *See* ECF No. 39 at 11–13.

employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).

"[A] plaintiff can prove disparate treatment either (1) by direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic, or (2) by using the burden-shifting framework set forth in *McDonnell Douglas*." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 213 (2015); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under *McDonnell Douglas*, the Court first asks whether the plaintiff has established a *prima facie* case. *See* 411 U.S. at 802. "To establish a prima facie disparate treatment claim, a plaintiff must present evidence that (1) she belongs to a protected class; (2) she suffered an adverse employment action; and (3) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Luster v. Vilsack*, 667 F.3d 1089, 1096 (10th Cir. 2011) (quotations and citation omitted). "If a plaintiff makes this showing, then the employer must have an opportunity 'to articulate some legitimate, non-discriminatory reason for' treating employees outside the protected class better than employees within the protected class." *Young*, 575 U.S. at 212 (citing *McDonnell-Douglas*, 411 U.S. at 802). "If the employer articulates such a reason, the plaintiff then has 'an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant [*i.e.*, the employer] were not its true reasons, but were a pretext for discrimination." *Id.* (alteration in original) (citing *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)). "[L]iability in a disparate-treatment case depends on whether the protected trait actually motivated the employer's decision." *Young*, 575 U.S. at 212 (citation omitted).

Here, Defendant argues that "there is no direct evidence of employment discrimination . . . in this case." *See* ECF No. 40 at 13; ECF No. 41 at 16–25; *see also* ECF No. 39 at 11. Plaintiff testified that she did not recall or was not aware of any statements by Mr. Domingo, Mr. Lego, or Ms. Creek indicating any bias against women, pregnant women, or people with disabilities. ECF No. 40 at 15; *id.* ¶ 84 (citing ECF No. 40-5 at 33–34). However, Plaintiff argues that when she received a letter of warning after three unscheduled absences in which she sought medical care due to discomfort and pain related to her pregnancy, this was "per se discrimination." ECF No. 41 at 16–18; ECF No. 39 at 11–12. Plaintiff provides no direct evidence that this letter of warning was motivated by discriminatory animus related to her pregnancy, rather than by the unscheduled nature of the absences and the burden they placed on the employer. *Cf.* ECF No. 42 ¶ 41 (citing ECF No. 40-2 at 25–26) ("An unscheduled absence places a burden on the employees who are working because they still have to deliver the same mail; it also increases costs because of overtime."); *see also id.* ¶ 40 (citing ECF No. 40-1 at 11) ("If there is an excuse for an unscheduled absence provided afterwards, that does not change the fact that the absence was unscheduled; whether an absence is unscheduled or unexcused are two entirely different things."). Mr. Lego testified that unscheduled absences place a burden on fellow postal carriers and the Postal Service. *Id.* at 24; *id.* ¶ 41 (citing ECF No. 40-2 at 25–26). Mr. Lego also testified that he issued letters of warning to other employees for unscheduled absences, even if the absences were later excused because they were for a doctor's visit. *Id.* ¶ 42 (citing ECF No. 40-2 at 26).

Given that Plaintiff has not provided direct evidence of discrimination, the Court applies the *McDonnell Douglas* burden-shifting framework to Plaintiff's discrimination claims. Plaintiff alleges that she received discriminatory treatment when, "[a]fter learning of [her] disability," that is, her pregnancy and the pursuant accommodations, "Defendant took the adverse actions of disciplining her and terminating her." ECF No. 28 ¶¶ 39, 43, 65. Plaintiff argues that the letter of warning regarding her unscheduled absences, at least one of which was due to a doctor's visit related to her pregnancy, constituted disciplinary or adverse action. ECF No. 39 at 11. Further, Plaintiff was terminated on January 31, 2015.

First, Plaintiff has not established a *prima facie* case that the letter of warning regarding her unscheduled absences was discriminatory because, for the reasons stated above, she has not shown that she received it "under circumstances giving rise to an inference of discrimination." *See Luster*, 667 F.3d at 1096. Further, "[o]ne method by which a plaintiff can demonstrate an inference of discrimination is to show that the employer treated similarly situated employees more favorably." *Luster*, 667 F.3d at 1095. Plaintiff has provided no evidence of any such similarly situated employees who received better treatment and testified that she does not know of any other CCA who did not receive a letter of warning after three or more unscheduled absences. ECF No. 42 at 20; *id.* ¶ 43 (citing ECF No. 40-5 at 26). Even if the letter of warning did raise an inference of discrimination, Defendant has "articulate[d] some legitimate, non-discriminatory reason[s] for" his treatment of Plaintiff, i.e., that the unscheduled absences placed a burden on the Postal Service, as discussed above. *See Young*, 575 U.S. at 213. Plaintiff has not

"prove[n] by a preponderance of the evidence that the legitimate reasons offered by the defendant . . . were not [the] true reasons, but were a pretext for discrimination." *Young*, 575 U.S. at 212.

Regarding Plaintiff's termination, Plaintiff has similarly not fulfilled her burden to raise an inference that it "occurred under circumstances giving rise to an inference of discrimination." *See Luster*, 667 F.3d at 1096. She has not pointed to any "similarly situated employee[]" who was treated more favorably because she has provided no evidence of another employee who refused to complete a mail delivery and walked off the job who was not terminated or suspended as a result. *See id.* at 1095. Further, the fact that Plaintiff walked off the job because she was overwhelmed fulfills Defendant's burden of "articulat[ing] some legitimate, non-discriminatory reason for" its treatment of Plaintiff. *Young*, 575 U.S. at 213. Finally, Plaintiff has provided no evidence that this reason was merely pretextual. *See id.* Although she provides arguments and information to mitigate the negative performance reviews that she received leading up to the day that she walked off the job, these statements do not support a conclusion that her abandonment of the job was a mere pretext for discrimination.

Even drawing inferences from the underlying facts in a light most favorable to Plaintiff, the Court does not find that she has born the burden to "go beyond the pleadings and 'set forth specific facts' . . . from which the trier of fact could find" in her favor. *See Matsushita Elec. Indus.*, 475 U.S. at 587. Nor has Plaintiff, as movant, carried "the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler*, 144 F.3d at 670–71.

11

Therefore, Defendant is entitled to summary judgment on Plaintiff's discrimination claims, ECF No. 28 ¶¶ 37–43, 63–66.

### B.     Count 2: Retaliation

"To establish a prima facie case of retaliation, a plaintiff must show '(1) protected employee action; (2) adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and the employer's adverse action." *Kilcrease v. Domenico Transp. Co.*, 828 F.3d 1214, 1225 (10th Cir. 2016). Plaintiff has not established the third element—a causal connection between the adverse employment actions of her discipline and termination and her protected activity of requesting accommodations due to her pregnancy.

Causal connection between protected activity and adverse employment action can be established by temporal proximity between the two events. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178–79 (10th Cir. 1999). Here, the events at issue took place within a relatively close temporal proximity, between mid-December of 2014 and the end of January of 2015. ECF No. 40 ¶¶ 15–80; ECF No. 39 ¶¶ 7. However, Defendant points out that Plaintiff received a negative performance evaluation *before* she requested accommodations, received letters of warning for unscheduled absences, or was terminated, which undermines a causal connection between her protected activity and her discipline or termination. ECF No. 40 at 18; *id.* ¶ 7; ECF No. 41 at 3. Plaintiff attempts to minimize the negative performance evaluations by noting that she also received feedback that she was a "pretty steady worker" and that negative performance evaluations "are common for all new CCA[]s because their skillset has not yet been built."

12

ECF No. 41 at 24, 27–29. Nonetheless, Plaintiff does not dispute that she received the negative performance evaluations. *See* ECF No. 41 at 3.

Even if Plaintiff had not received negative performance evaluations prior to her request for accommodation, the Tenth Circuit has held that "evidence of temporal proximity has minimal probative value in a retaliation case where intervening events between the employee's protected conduct and the challenged employment action provide a legitimate basis for the employer's action." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1001–02 (10th Cir. 2011); *see also Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006) (holding that "intervening events defeat any inference of retaliation"). The incident on January 15, 2021, in which Plaintiff walked off the job and refused to finish delivering the mail, constitutes an intervening event that "provide[s] a legitimate basis for the employer's action." *Twigg*, 659 F.3d at 1001–02. Hence, Plaintiff has not established that there is a genuine dispute of material fact that precludes summary judgment on her retaliation claim, and it should be dismissed.

    **C.**    **Count 3: Harassment and Hostile Work Environment**

Plaintiff also alleges that "[t]he adverse acts complained of were sufficiently severe and pervasive . . . and created an intimidating, hostile, and offensive working environment." ECF No. 28 ¶ 52. To make out a claim of discrimination "based on a hostile work environment," Plaintiff must "show (1) that she was discriminated against" because of her status in a protected group; and "(2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and

created an abusive working environment." *Morris v. City of Colo. Springs*, 666 F.3d 654, 663 (10th Cir. 2012).

First, for the reasons stated above, *supra* Section III.A., the Court does not find that plaintiff has shown that she was discriminated against. Second, even if this first element had been met, in order to meet the second element, Plaintiff must demonstrate that the discriminatory conduct was "extreme" to show that it "amount[ed] to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998). "[A] plaintiff may not predicate a hostile work environment claim on the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces." *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015). "[T]he totality of the circumstances is the touchstone of a hostile work environment analysis," and "it is not enough that a particular plaintiff deems the work environment hostile; it must also be of the character that it would be deemed hostile by a reasonable employee under the same or similar circumstances." *Id.* (internal quotations and citations omitted).

Before she was terminated, Plaintiff received negative performance reviews, she received letters of warning, her immediate supervisor yelled at her because he believed that she did not load a gurney correctly, and her immediate supervisor told her to come back and carry packages that she had left at the station because she thought they would be too heavy to carry, due to her accommodation for her pregnancy. Drawing inferences from these facts in a light most favorable to Plaintiff, the Court does not find that they constitute "extreme" conduct that rises to the level of a hostile work environment. *See Faragher*, 524 U.S. at 778; *Matsushita Elec. Indus.*, 475 U.S. at 587; *Lounds*, 812 F.3d

at 1222. Therefore, Defendant is entitled to summary judgment on Plaintiff's harassment and hostile work environment claim, ECF No. 28 ¶¶ 49–55.

### D. Count 4: Failure to Accommodate

The Americans with Disabilities Act ("ADA") prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §§ 12111(2), 12112(a); *see TriCore Reference*, 849 F.3d at 933. A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see TriCore Reference*, 849 F.3d at 933. "[T]he term 'discriminat[ing] against a qualified individual on the basis of disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A); *see TriCore Reference*, 849 F.3d at 933.

"[T]here are generally four elements [Plaintiff] had to show to establish a prima facie failure-to-accommodate claim: 1) she was disabled, 2) she was otherwise qualified, 3) she requested a plausibly reasonable accommodation, and 4) the [employer] refused to accommodate her disability." *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020). Plaintiff has failed to establish that Defendant refused to accommodate her disability. Plaintiff testified that Mr. Domingo told her that she did not have to lift packages over 20

pounds and that she could leave such packages at the stations. ECF No. 40 ¶¶ 24, 25 (citing ECF No. 40-2 at 5–6). The accommodation at issue is therefore "that Plaintiff was required to tell a manager or another employee to assist with heavy packages." ECF No. 41 ¶ 18. Plaintiff appears to take issue with the fact that (1) her accommodation was not sufficient and (2) on two occasions, Defendant failed to abide by her accommodation.

First, Plaintiff argues that her accommodation was insufficient because, instead of requiring her to determine when she would need help with packages, Defendant should have weighed packages for her, or provided her with tools to do so, in order to ensure that she was not lifting, pulling, or pushing anything heavier than 20 pounds. ECF No. 39 at 9–10; ECF No. 41 at 14–15. Also, Plaintiff suggests in her Response to Defendant's Motion for Summary Judgment that Defendant should have provided her with leave as an accommodation. ECF No. 41 at 3, 17–18. However, to the extent these proposed alternative accommodations were reasonable, Plaintiff should have communicated with Defendant about the fact that she believed her accommodation was not sufficient. "The federal regulations implementing the ADA 'envision an interactive process that requires participation by both parties.'" *Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619 (10th Cir. 1998). The Tenth Circuit "ha[s] also held that the Rehabilitation Act 'requires an interactive process.'" *Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010) ("The obligation to engage in an interactive process is inherent in the statutory obligation to offer a reasonable accommodation to an otherwise qualified disabled employee."). "An employer cannot be expected to correct an impediment [in a provided accommodation] of which it was not aware." *McFarland v. City & Cnty. of Denver*, 744 F. App'x 583, 587

(10th Cir. 2018) (upholding summary judgment in favor of employer where the plaintiff's "failure to communicate with the City was the sole cause of the breakdown in the interactive process"). The fact that Plaintiff is now proposing alternative accommodations does not establish that Defendant failed to accommodate her condition.

In addition, Plaintiff alleges that there were two occasions on which Defendant allegedly failed to abide by Plaintiff's accommodation. ECF No. 39 at 10; ECF No. 40 at 20; ECF No. 41 at 15. First, she alleges that Mr. Domingo "told her to leave a heavy package but then called her on the street to come back and deliver it, which she did." ECF No. 41 ¶ 25. Second, Plaintiff alleges that Mr. Lego "tried to load her gurney differently and ask for help in pushing the gurney, and she was yelled at by Supervisor Lego that she couldn't do it 'her way', she had to do it 'their way,' and Plaintiff cried during this incident and received no assistance." *Id.* ¶ 26.

However, as stated above, Plaintiff's accommodation was that she would not be required to push, pull, or carry more than 20 pounds, and she could ask for help whenever she needed to. *Id.* ¶ 18. This accommodation, as well as Tenth Circuit case law, puts the responsibility on Plaintiff to communicate with her employer about whether her accommodation was being met. *See Templeton*, 162 F.3d at 619; *McFarland*, 744 F. App'x at 586–87. However, Plaintiff did not remind Mr. Domingo of her accommodation when he told her to come back to the station to carry packages that she had earlier decided were too heavy. ECF No. 41 ¶ 25; ECF No. 39 at 41. Also, Plaintiff does not allege that Mr. Lego yelled at her for refusing to push, pull, or carry more than 20 pounds while loading the gurney or that he was requiring her to do so. ECF No. 41 ¶ 26; ECF

17

No. 39 at 42–43. In fact, Plaintiff did not ask Mr. Lego why he was upset with her. ECF No. 41 ¶ 26; ECF No. 39 at 42. Plaintiff never told anyone at the Postal Service that she believed her accommodation was not being followed, which was a key part of the interactive process of the reasonable accommodation framework. ECF No. 40 ¶ 37 (citing ECF No. 40-5 at 32); *id.* at 20; *McFarland*, 744 F. App'x at 587; *Wilkerson*, 606 F.3d at 1266; *Templeton*, 162 F.3d at 619.

Given her failure to engage with the necessary interactive process for her employer to provide her with a reasonable accommodation, Plaintiff cannot establish a prima facie case of failure to accommodate. Therefore, Defendant is entitled to summary judgment on this claim, as well.

## IV. CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's Motion for Partial Summary Judgment, ECF No. 39, and GRANTS Defendants' Motion for Summary Judgment, ECF No. 40. As such, Plaintiff's claims and this case are DISMISSED WITH PREJUDICE.

DATED: April 1, 2022

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge